The Missouri, Kansas & Texas Railway Company v. The New Era Milling Company.

No. 15,742.    (100 Pac. 273.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Discrimination—Common-law Obligation.* Independent of any statute—as a part of its common-law obligation—a railroad company is required to treat its patrons impartially and to avoid unjust discrimination.

2. ——— *Discrimination in Charges.* Any discrimination in charges on the part of a common carrier is unjust for which no sufficient reason exists in the character of the service.

3. ——— *Same.* The requirement that one shipper shall pay a higher rate than another for substantially similar services rendered under substantially similar conditions is an unjust discrimination, of which any one may complain who is thereby injured.

4. ——— *Reasonable Rates—Rights of Shipper.* A shipper has a right to demand that the rates charged him shall not only be reasonable in themselves, in respect to the profit to the carrier, but reasonable in respect to the charges made for similar services under similar circumstances to other shippers who are or who may be his business competitors.

5. ——— *Unjust Discrimination — Recovery of Overcharges.* Where a tariff of a railroad company fixes a rate on shipments originating on its own line or on certain enumerated connecting lines it assumes the obligation to carry at that rate for shippers whose shipments originate on other lines as well, and if such a shipper is required to pay for such services at a higher rate than that named in the tariff he is entitled to recover the amount of the overcharge.

6. JURISDICTION—*Recovery of Overcharges—Common-law Remedy—Interstate Commerce.* Where the plaintiff does not rely upon the interstate commerce act, but bases his claim on common-law principles, an action for such recovery may be brought in the state court, although the shipments involved were made across state lines.

Error from Labette district court; THOMAS J. FLANNELLY, judge. Opinion filed February 6, 1909. Affirmed.

*John Madden,* and *W. W. Brown,* for plaintiff in error.

*Archie D. Neale,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: The New Era Milling Company, a corporation engaged in the manufacture of flour at Arkansas City, sued the Missouri, Kansas & Texas Railway Company for charges exacted for the carriage of its products, alleged to have been excessive, and recovered a judgment, to reverse which this proceeding is brought. The judgment is attacked upon three grounds, namely: (1) That the evidence did not show that the plaintiff paid more than was required of other shippers for the same services; (2) that, even if so, no right of recovery was thereby established, because no statute was invoked and at common law a shipper can not complain that others pay less than he for the same services so long as the charge exacted of him is not in itself unreasonable; and (3), the shipments having been interstate, the state court had no jurisdiction of the action.

The evidence showed that the plaintiff had shipped flour from a point on the Atchison, Topeka & Santa Fe and St. Louis & San Francisco railroads to points on the defendant's railway, and had been required to pay to the defendant for the carriage over its road more than the amount that an existing tariff of the defendant fixed for the same services in the case of shipments

originating on its own line or on those of the Denver, Enid and Gulf and the St. Louis, El Reno & Western railway companies. The defendant claims that the tariff relied upon by the plaintiff was not in force at the time the shipments were made, having been annulled by a supplement. But the supplement expressly provided that the rates named in the tariff should apply only on shipments originating on the lines of the defendant and the two favored roads. How the rates paid by the plaintiff were arrived at is not shown, but they were not fixed by any tariff introduced in evidence, and they were in excess of the tariff charges on goods shipped from points on other roads. It therefore appears that the plaintiff was required to pay more than was exacted of other shippers for the same services, and that the reason for the difference was that its shipments did not originate on any of the roads named in the tariff.

Considerable support is to be found in the authorities for the claim of the railway company that so long as the plaintiff was not compelled to pay charges that were in themselves unreasonably high the fact that lower rates were given to other shippers affords it no ground for complaint. Thus, in volume 4 of the second edition of Elliott on Railroads, section 1467, it is said:

"The common law prohibits common carriers from making unjust discriminations in furnishing facilities for transporting goods and in charges for transportation. The authorities agree that unjust discrimination is forbidden, but as to what is to be regarded as unjust discrimination there is some diversity of opinion. While it is true that the common law forbids discrimination, what constitutes discrimination in such a sense, especially as to rates, has given rise to considerable discussion. Expressions in many of the opinions seem to indicate that even as to rates all shippers must be treated alike, and one rate charged in all cases, but this presses the rule beyond its legitimate scope. The cases go so far as to affirm that 'He' (the carrier) 'is not required to treat all those who patronize him with absolute equality. It is his privilege to charge less

than a fair compensation to one person, or to a class of persons, and others can not justly complain so long as he carries on reasonable terms for them. Respecting preference in rates of compensation, his obligation is to charge no more than a fair return in each particular transaction, and except as thus restricted he is free to discriminate at pleasure.' "

And in the third edition of Schouler's Bailments and Carriers, section 374, it is said:

"The common law never went so far as to compel a common carrier to treat all customers equally. He might show special favor to individuals by taking their freight at an unreasonably low rate, or even free of charge, without being compelled to do the same by others. The fact that others were charged less was available to a particular customer only so far as it tended to show that this customer himself was charged unjustly high; and if the carrier had demanded of him only a reasonable reward for the service, this duty was well discharged."

And in section 16 of Moore on Carriers it is said:

"A recovery by a shipper from a carrier because of partiality and favoritism to other shippers can not be had, in the absence of statute, provided the complaining shipper has not been charged more than a reasonable rate."

(See, also, note in 1 A. & E. Ann. Cas. 55.)

On the other hand, in the first edition of Hutchinson on Carriers, section 302, it was said:

"We may conclude that in this country, independently of statutory provisions, all common carriers will be held to the strictest impartiality in the conduct of their business, and that all privileges or preferences given to one customer, which are not extended to all, are in violation of their public duty."

But this language is omitted from the subsequent editions of the work. The following extracts, however, exhibiting the same view, are from the current editions of the works named:

"It has been held in this country, where there is no statutory regulation affecting the question, that com-

mon carriers are not absolutely bound to charge all customers the same price for the same service. But as the rule is clearly established at common law that a 'carrier is bound by law to carry everything which is brought to him for a reasonable sum, to be paid to him for the same carriage, and not to extort what he will,' it would seem to follow that he is bound to carry for all at the same price, unless there is some special reason for the distinction. For unless this were so the duty to carry for all would not be of much value to the public, since it would be easy for the carrier to select his own customers at will by the arbitrary discrimination in his prices. Hence it was held, at an early day, that all which could be required on the part of the owner of the goods by way of compensation was that he should be ready and willing to pay a reasonable compensation, and to deposit the money in advance, if required. Carrying for reasonable compensation must imply that the same compensation is accepted always for the same service, else it could not be reasonable, either absolutely or relatively." (2 Redfield, Law of Rlys., 6th ed., p. 101.)

"The English courts have said that at common law common carriers were bound to make reasonable but not equal charges, and that one of whom a fair compensation was exacted had no cause of complaint because another obtained a similar service for less. It is doubtful if this really was the common law of England; certainly it never was that of the United States. It is the settled American doctrine that as common carriers exercise a public employment, they owe equal duties to all, and must make no unjust or injurious discrimination between different individuals in their rates of toll." (Baldwin, Am. Rld. Law, p. 350.)

"Prior to the enactment of the act of February 4, 1887, to regulate commerce, commonly known as the interstate commerce act, 24 Stat. 379, c. 104, railway traffic in this country was regulated by the principles of the common law applicable to common carriers, which demanded little more than that they should carry for all persons who applied, in the order in which the goods were delivered at the particular station, and that their charges for transportation should be reasonable. It was even doubted whether they were bound to make the same charge to all persons for the same service

[citing authorities] ; though the weight of authority in this country was in favor of an equality of charge to all persons for similar services." (*Interstate Com. Commis. v. B. & O. Railroad*, 145 U. S. 263, 275, 12 Sup. Ct. 844, 36 L. Ed. 699.)

The state of the law on the general subject involved, as exhibited by the decisions, is fully and fairly presented in a note to *Root v. Long Island R. R. Co.*, 114 N. Y. 300, in 11 Am. St. Rep. 643, 647, where it is said:

"It is a general and well-established principle of law that a common carrier, in the performance of his public service of transportation, can not make unjust or unreasonable discriminations between, nor give undue or unreasonable preferences to, persons applying to him for the transportation of persons or goods, either in granting carriage to some and not to others, or in carrying for some at less rates than for others. . . . But all discriminations are not necessarily unreasonable or unjust, and it is only those which are unreasonable or unjust that are unlawful. . . . It is not an easy matter to determine what are and what are not unreasonable and unjust discriminations. So much necessarily depends upon the particular circumstances of each individual transaction that it is extremely difficult to lay down any general rule on the subject. At common law, and in the absence of statutory regulations, it has been held that a common carrier is not bound to treat all who employ him with absolute equality, provided the rates he charges are reasonable to all, and that a particular customer has no right to complain if the rate to him is reasonable, though other persons are charged a less rate, or even nothing at all, for the same service. . . . But even where the rate charged by a railway company is reasonable, the tendency of the modern authorities and of recent legislation in this country is to stamp discrimination as unjust and unlawful if it subjects others to unreasonable disadvantages, or is made in order to give one individual a preference to the disadvantage of another, or to give preference or advantage to one locality to the prejudice of another locality. A railway company may, as a matter of charity, render a transportation service without price, or for less than a reasonable price, but it has no right to reimburse itself by charging others more than a reasonable price. A discrimination

against a particular person or locality is unjust unless some good reason can be shown to justify it, for, under like circumstances, and for the same class of goods, the same rates should be charged to all."

As suggested in this note, recent legislation has aided in the modern tendency referred to, but the statutes covering this feature of the subject have often been held to be merely declaratory of the common law. A section of the constitution of Colorado reads:

"All individuals, associations and corporations shall have equal rights to have persons and property transported over any railroad in this state, and no undue or unreasonable discrimination shall be made in charges or in facilities for transportation of freight or passengers within the state, and no railroad company, nor any lessee, manager or employee thereof, shall give any preference to individuals, associations or corporations in furnishing cars or motive power." (Const. of Colorado, art. 15, § 6.)

In *A. T. & S. Railroad v. D. & N. O. Railroad,* 110 U. S. 667, 4 Sup. Ct. 187, 28 L. Ed. 291, it was said that these provisions imposed no greater obligations upon a railroad company than the common law would have imposed without it, since "every common carrier must carry for all to the extent of his capacity, without undue or unreasonable discrimination either in charges or facilities." (Page 674.) And of a statute passed in aid of this constitutional provision it was said, in *Union Pacific Railway v. Goodridge,* 149 U. S. 680, 13 Sup. Ct. 970, 37 L. Ed. 986:

"The statute recognizes the fact that it is no proper business of a common carrier to foster particular enterprises or to build up new industries, but, deriving its franchise from the legislature, and depending upon the will of the people for its very existence, it is bound to deal fairly with the public, to extend them reasonable facilities for the transportation of their persons and property, and to put all its patrons upon an absolute equality." (Page 690.)

The case of *Scofield v. Railway Company,* 43 Ohio St.

571, 3 N. E. 907, 54 Am. Rep. 846, was a successful action by manufacturers of petroleum products to restrain a railway company from charging them higher freight rates than were exacted from the Standard Oil Company for like services. The contention of the defendant was that it was not bound to carry for all freighters at the same rate, but that its duty was fully discharged if it carried for all, charging none more than a reasonable rate. The justice who wrote the opinion, after an elaborate review of the conflicting authorities, stated the conclusion of the court in these words:

"I think, however, that all the cases that have been referred to, on their facts, might be harmonized by observing the distinction so often alluded to, that is to say, that as between a consignor and the common carrier, where no other reason intervenes to engraft an exception on the rule, all the consignor can demand of the common carrier is that his goods shall be carried at a reasonable rate, not necessarily at an equal rate with all others. But when the reduced rate is either intended to, or has a natural tendency to injure the plaintiff in his business and destroy his trade, then a necessary exception is engrafted on the more general rule, and the plaintiff has then the right to insist that rates to all be made the same for goods shipped 'under like circumstances.'" (Page 617.)

A general expression is given to the doctrine of this decision in volume 1 of the second edition of Wood on Railroads, section 197, in these words:

"The question of undue preferences arises most frequently in reference to the rates charged for the transportation of goods. It may be said that the rule is, both at common law and under most of the regulatory statutes, that under like circumstances, and for the same class of goods, the same rates should be charged to all. Railways are held to the strictest impartiality in the conduct of their business in withholding all privileges or preferences from one customer which are not extended to all others. But this rule is subject to the qualification that where a rate of freight is reasonable for all customers, contracts for a less rate may be made

Railway Co. v. Milling Co.

in special cases, when, under all the circumstances, the discrimination is reasonable and just. The discrimination must not subject others to unreasonable disadvantages, nor must it be made in order to give one individual a preference, to the disadvantage of another, or to give preference and advantage to one locality to the prejudice of another locality. A mere discrimination in favor of a customer is not unlawful unless it is an unjust discrimination."

This doctrine is sufficient to support the action of the plaintiff in the present case. True, the plaintiff did not show that its business was in fact injured, much less destroyed, by the discrimination made; but the requirement that it should pay higher freight rates than others, merely because it was situated upon a different line of railroad, necessarily had a tendency in that direction, and was evidence of a purpose to place it at a disadvantage in seeking a market for its product.

But we are not disposed to rest the case here. We think the fact that a common carrier is under an obligation to serve the public implies that it must furnish an indiscriminate and impartial service. The carrier's duty certainly can not be fulfilled by giving one shipper facilities inferior to those afforded to others, and no distinction can be made in principle between an inferior service and an equal service at a higher rate. Many of the cases that seem to deny the requirement of impartial treatment in reality hold merely that the special circumstances presented no partiality. Partiality is a term appropriately used to describe a distinction made between shippers in charges made for essentially similar services under essentially similar conditions. If the circumstances make the services or conditions different a variation in the charge does not constitute partiality. The defendant in the present case argues that the difference in charges may have been due to a difference in services, or in the circumstances under which they were rendered. But the fact that the plaintiff's mill was not on one of the roads named in the tariff is the apparent reason why it was refused the

benefit of the tariff rates.  The evidence showed, *prima facie* at least, that the discrimination against the plaintiff was made on account of the road over which the flour traveled on its way to the defendant's line.  Such discrimination, being one for which no sufficient reason can be given, was unjust and illegal.

A single instance of carrying freight for less than the regular rates may stand on a different footing—a service performed as an act of charity, even gratuitously, clearly does so; but the establishment of a schedule of charges for the carriage of goods on a commercial basis for one class of patrons makes the exaction of higher charges from others an act of partiality—of unjust and therefore illegal discrimination, available as a cause of action to any one injured by it to the extent of his injury.  It may be true as an abstract proposition that one shipper can not complain merely because a carrier shows favoritism to another.  But the reason he can not complain is that he is not thereby injured—that it is a matter of indifference to him what rate any one else may pay so long as he is not overcharged.  If, however, the favoritism is extended to one who is an actual or potential business competitor, injury follows as a matter of course.  In the present case a regular rate was fixed for those handling the commodity in which the plaintiff dealt who were situated on certain lines of road.  The plaintiff was denied the benefit of the rate because it was located on another road.  As was said in *C. & A. R. R. Co. v. The People ex rel.*, 67 Ill. 11, 21, 16 Am. Rep. 599, it can not be supposed that a permanent rate of charges woud be established upon a scale that would not furnish a remunerative profit.  The tariff was at least some evidence that the rate there named was reasonable.  The plaintiff was rightly permitted to recover all it had been required to pay in excess of the schedule there fixed.

The trend of the decisions is sufficiently shown by what has already been said, but additional quotations are pertinent to illustrate the reasons that have been

advanced to justify the requirement, independently of any statute, that a common carrier shall deal impartially with all, and make no distinction between individuals or communities except for just cause. The discussion in *C. & A. R. R. Co. v. The People ex rel.,* 67 Ill. 11, 16 Am. Rep. 599, concerning what discriminations are unjust, is in point in this connection, although the case arose upon a statute which was held to be void. The court, after commenting upon the obligation of carriers at the common law to refrain from unjust discrimination between individuals or communities, proceeded:

"It was never intended or expected that these corporations should use their power to benefit particular individuals or build up particular localities by arbitrary discriminations in their favor that must cause injury to other persons or places engaged in rival pursuits or occupying rival positions. It is in vain to say, in defense of such discriminations, made without just cause, that the rate of charges against the injured person or locality is a reasonable rate and therefore no injury is done. An injury, as a matter of fact, is committed in the manner just suggested, and the legislature has the right to require the corporation to show a sufficient cause for the discrimination which produces the injury, and it can not be permitted to evade the issue by raising the speculative inquiry as to whether the rates charged against the injured parties or localities are not, after all, reasonable rates. Even if reasonable, when regarded in reference to the profit upon the capital invested in the road, they are not reasonable, in the true sense of the term, if no satisfactory reason can be given for charging less rates for the same or for greater services rendered to persons doing business with the company at neighboring stations." (Page 22.)

In *Western Union Telegraph Co. v. Call Publishing Co.,* 44 Neb. 326, 62 N. W. 506, 48 Am. St. Rep. 729, 27 L. R. A. 622, decided upon common-law principles, it was said:

"It is argued by the telegraph company that no cause of action can be predicated upon the mere fact that another patron obtained services for a lesser rate,

unless it be shown that the rate charged the complainant is in itself unreasonable and excessive. There are cases to this effect, but we can not lend our assent either to their reasoning or to their conclusion. On the contrary, we believe the true rule to be that rates must not only be reasonable in themselves, but must be relatively reasonable; that is, that a person or corporation engaged in public business, and obligated to render its services to all persons having occasion to avail themselves thereof, is bound, in fixing its rates, to observe two rules: First, its rates must be reasonable, and, second, it must not, without a just and reasonable ground for discrimination, render to one patron services at a less rate than it renders to another, where such discrimination operates to the disadvantage of that other." (Page 337.)

In affirming a subsequent judgment rendered in the same case the federal supreme court said:

"Common carriers, whether engaged in interstate commerce or in that wholly within the state, are performing a public service. They are endowed by the state with some of its sovereign powers, such as the right of eminent domain, and so endowed by reason of the public service they render. As a consequence of this, all individuals have equal rights both in respect to service and charges. Of course, such equality of right does not prevent differences in the modes and kinds of service and different charges based thereon. There is no cast-iron line of uniformity which prevents a charge from being above or below a particular sum, or requires that the service shall be exactly along the same lines. But that principle of equality does forbid any difference in charge which is not based upon difference in service, and even when based upon difference of service, must have some reasonable relation to the amount of difference, and can not be so great as to produce an unjust discrimination." (*The Western Union Tele. Co. v. Call Pub. Co.,* 181 U. S. 92, 21 Sup. Ct. 561, 45 L. Ed. 765.)

The following excerpts further exhibit the grounds upon which common carriers are held to owe to the public an obligation to serve all patrons impartially:

"The very definition of a common carrier excludes,

the idea of the right to grant monopolies or to give special and unequal preferences. It implies indifference as to whom they may serve, and an equal readiness to serve all who may apply, and in the order of their application. The defendants derive their chartered right from the state. They owe an equal duty to each citizen. They are allowed to impose a toll, but it is not to be so imposed as specially to benefit one and injure another. . . . Such is the common law on the subject." (*New England Express Company v. Maine Central Railroad Company*, 57 Maine, 188, 196, 2 Am. Rep. 31.)

"Wherever a charter is granted for the purpose of constructing a railroad, and the corporation is clothed with the power to take private property, in order to carry out the object, it is an inference of law from the extent of the power conferred, and subject-matter of the grant, that the road is for the public accommodation. The right to take toll is the compensation to be received for the benefits conferred. If the public are entitled to these advantages, it results from the nature of the right that the benefits should be extended to all alike, and that no special privileges should be granted to one man or set of men, and denied to others." (*Sanford v. Railroad Co.*, 24 Pa. St. 378, 381, 64 Am. Dec. 667.)

"A railroad company . . . is not only by force of its inherent nature a common carrier, . . . but it becomes an agent of the public in consequence of the powers conferred upon it. A company of this kind is invested with important prerogative franchises, among which are the rights to build and use a railway, and to charge and take tolls and fares. These prerogatives are grants from the government, and public utility is the consideration for them. Although in the hands of a private corporation, they are still sovereign franchises, and must be used and treated as such; they must be held in trust for the general good. If they had remained under the control of the state it could not be pretended that in the exercise of them it would have been legitimate to favor one citizen at the expense of another. If a state should build and operate a railroad, the exclusion of everything like favoritism with respect to its use would seem to be an obligation that

could not be disregarded without violating natural equity and fundamental principles. . . . In their very nature and constitution, as I view this question, these companies become, in certain aspects, public agents, and the consequence is they must, in the exercise of their calling, observe to all men a perfect impartiality." (*Messenger et al. v. Pennsylvania R. R. Co.*, 36 N. J. Law, 407, 413, 13 Am. Rep. 457.)

"At common law all shippers stand on an absolute equality with reference to transportation by common carriers, and no such carrier has the right to discriminate in favor of one as against another. . . . To permit a railroad company to unjustly discriminate in the carriage of either freight or passengers, in favor of one shipper as against another, or in favor of one locality as against others, would be destructive of common right, and allow private and public enterprises to be built up or pulled down at the will or caprice of a common carrier deriving its franchise from the people." (*K. P. Ry. Co. v. Bayles,* 19 Col. 348, 351, 352, 35 Pac. 744.)

"The defendant railroad companies are common carriers and are under obligation to serve the public equally and justly. Having accepted their right of existence from the public, they owe a duty to the public, and their conduct must be equal and just to all. The very definition of a common carrier excludes the right to grant monopolies or to give special or unequal preferences. It implies indifference as to whom he may serve and an equal readiness to serve all who may apply in the order of their application. (*New England Express Company v. Maine Central Railroad Company,* 57 Me. 188, 2 Am. Rep. 31.) From these characteristics, which apply to all common carriers, it is a sound legal principle that a railway company as a common carrier can not grant to any person or persons, or to any part of the public, rights or privileges which it refuses to others, but must treat all alike." (*Kates v. Atlanta Baggage & Cab Co.,* 107 Ga. 636, 645, 34 S. E. 372, 46 L. R. A. 431.)

We think the contention that the state court has no jurisdiction of the action is unsound. The allegations of the petition show a debt owing to the plaintiff by

the defendant.   That it originated in a commercial transaction not confined to a single state does not affect the matter.   There is no reason why it may not be enforced in any court of general jurisdiction unless the interstate commerce act forbids such action, expressly or by necessary implication.   That act provides that the remedies which it creates are enforceable only by proceedings before the interstate commerce commission or in a federal court, but in terms declares that these remedies are additional to those existing at the common law, which are to remain unabridged and unaltered.   The plaintiff did not base its right of recovery upon that or any other statute, but upon the common law.   It seems clear, therefore, that its action was properly brought in the state court.   The question involved was suggested but not decided in *Texas & Pac. Ry. v. Abilene Cotton Oil Co.*, 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553.   Jurisdiction was denied to the state court in that case, but upon the ground that the rates there attacked had been fixed by the carrier in accordance with the interstate commerce act and had not been found to be unreasonable by the commission.   The argument there made is wholly consistent with the conclusion just stated.

"In suits brought for the enforcement of rights in interstate commerce and not for the specific enforcement of the provisions of the interstate commerce act or the antitrust act, the state courts have concurrent jurisdiction with the federal courts.   .   .   .   The fact that interstate commerce is beyond state legislative control does not *ipso facto* prevent the courts of the state from exercising jurisdiction over cases growing out of that commerce."   (Judson, Inter. Com. § 44.)

"The exclusiveness of the jurisdiction over suits brought under these remedial sections of the act to enforce its provisions must be distinguished from the concurrent jurisdiction of the state court over questions in interstate commerce, not arising from or based upon the act."   (Judson, Inter. Com. § 248.)

The judgment is affirmed.