## Ft. Smith & W. R. Co. v. Chandler Cotton Oil Co.

No. 224. Opinion Filed November 9. 1909.

(106 Pac. 10.)

1. **COMMERCE—Interstate Commerce Commission—Jurisdiction—Rates.** The Interstate Commerce Commission prior to tne amendment of the act under which it operated on August 28, 1906 (Act Cong. Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901. p. 3154] as amended by Act Cong. 28, 1906, c. 3591, 34 Stat. 584), had no jurisdiction to fix or adjust charges or rates on shipments, the carriage of which was wholly within a territory.

2. **CARRIERS—Excessive Rates—Recovery—Pleading—Sufficiency.** In an action brought to recover money paid a railroad company for unreasonable charges for transportation, plaintiff's petition alleged the distance from the point where the shipment started to the point where it ended, and averred that a certain sum was a reasonable compensation for carrying the commodity involved over the line of the company that distance, and charged that the defendant wrongfully and without authority of law charged plaintiff for transportation a different and larger sum, stating it, more than a reasonable charge, and that plaintiff was compelled to pay the same, which it did under protest. and that it had never in any way consented that the charge exacted was a reasonable one, but, on the contrary, had demanded the return of the excessive and unreasonable part of said charge, which had been by the defendant refused. To this petition a general demurrer was filed, which was by the court overruled. **Held, not error.**

3. **APPEAL AND ERROR—Review—Verdict—Sufficiency of Evidence.** In an action tried to a jury, where the court hears all of the evidence offered by the different parties and fairly instructs the jury on the law applicable to the case and a verdict is returned within the issues and is reasonably supported by the evidence, the same will not be disturbed on appeal.

(Syllabus by the Court.)

*Error from District Court. Lincoln County; John H. Burford, Judge.*

Action by the Chandler Cotton Oil. Company against the Ft. Smith & Western Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Charles E. Warner* and *Dale & Bierer,* for plaintiff in error. *Flynn & Ames,* for defendant in error.

DUNN, J. On February 19, 1906, the Chandler Cotton Oil Company, defendant in error, as plaintiff, filed its petition in the district court of Lincoln county, Okla. T., in which there were set forth 32 different causes of action against the Ft. Smith & Western Railroad Company, plaintiff in error, as defendant. To this petition the defendant filed its demurrer, in which it challenged the jurisdiction of the court and the sufficiency of the allegations of the petition to support the action. This demurrer was by the court overruled, to which exception was saved, and, after the issues were joined, the cause was tried to a jury, which returned a verdict in favor of plaintiff. Motion for new trial was filed and overruled, and the defendant in error has brought the case to this court for review by petition in error and case-made.

Counsel argues that the interstate commerce act (Act Cong. Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) was in force in the territory of Oklahoma, and hence under the petition filed the court was without jurisdiction to entertain this action. In this counsel are in error, as the causes of action sued on herein all arose prior to the amendment of the interstate commerce act (Act Cong. Aug. 28, 1906, c. 3591, 34 Stat. 584), and prior to the amendment the original act applied solely to commerce from one state or territory or District of Columbia to any other state, territory, or District of Columbia, but not to commerce wholly within a territory. 1 Drinker on the Interstate Commerce Act, § 40; *Blackwell Milling & Elevator Company v. Missouri, Kansas & Texas Railway,* 12 Interst. Com. R. 23; *Ponca City Milling Company v. Missouri, Kansas & Texas Railway Company,* 12 Interst. Com. R. 26.

The charging part of the petition in each of the counts with a change in names to fit the specific facts was as follows:

"Plaintiff further states that the distance from Midlothian to Warwick is 7 miles, and that a reasonable compensation for carrying said cotton seed from Midlothian to Warwick was $20.68, but

that the said defendant, wrongfully and without authority of law, charged this plaintiff for the transportation of said cotton seed from Midlothian to Warwick $44.87, which said charge this plaintiff was compelled to pay, but the payment of which was made by the plaintiff under protest; and the plaintiff has never in any way consented that said unjust and unlawful charge was a reasonable compensation, but, on the contrary, plaintiff has formally demanded the return of the unreasonable part of said charge, which said demand the defendant has at all times refused."

Counsel takes the position that conclusions, and not facts, are stated herein, and that the court erred in overruling the general demurrer filed thereto. There is some dispute among the authorities as to whether or not a legal conclusion in a pleading may be reached by a demurrer under a Code which provides, as does ours, for a statement of facts constituting the cause of action in ordinary and concise language and without repetition. 31 Cyc. 280. But, conceding the rule adopted by the Supreme Court of the Territory of Oklahoma in the case of *Smith v. Kaufman & Co.*, 3 Okla. 568, 41 Pac. 722, to be correct on this proposition, we are yet inclined to the view that the averments of the petition present issuable statements of fact and substantially meet the legal requirements in this regard.

But two propositions remain for discussion which arise on the action of the court overruling defendant's demurrer to plaintiff's evidence and its refusal to give a peremptory instruction to the jury directing it to return a verdict in defendant's favor at the conclusion of all the evidence. Both of these points, as we view the record, may be considered together. No point is made in the argument of the case upon the instructions nor upon the precise amount of recovery, and the question for us to determine is simply whether there is evidence in the record reasonably tending to support and sustain the verdict. If there is, then this court cannot give relief, however much it might disagree from the conclusion reached.

Section 55, c. 14, art. 5, par. 704, Wilson's Rev. & Ann. St. 1903, provides:

"A common carrier is entitled to a reasonable compensation and no more, which he may require to be paid in advance."

In each of the counts set forth in the petition plaintiff sets out the amount which it asserts was a reasonable compensation for the service rendered and that the defendant wrongfully and without authority of law charged the plaintiff a sum much in excess thereof; the amount charged being generally practically twice the amount asserted to be reasonable. This case arose and was tried prior to the erection of the territory of Oklahoma into a state, and at a time when no commission or board had any authority to correct inequalities in railroad rates within the territory. It is conceded by all who are conversant with the subject that no proposition is generally more difficult to determine with absolute accuracy than what is or what is not within debatable grounds a reasonable charge for transportation. The declaration of our statute thereon is the rule of the common law. Out of the experience of the people in dealing with the subject grew the conviction that the administration of so important and intricate a function could not with safety be left to the judgment of unschooled courts and juries, and that the importance of it was so great that the establishment of boards specially trained for the study and ascertainment of the proper basis for a rule on this subject was necessary. These boards or commissions are generally given power to fix uniform rates and to this service they bring the skill and experience of trained minds. In the case at bar, at the time it arose and the rights of the parties were established, no such board or commission with jurisdiction to deal with them existed, and the only method provided by law for the ascertainment of what was and what was not a reasonable compensation was in the submission of the facts involved for determination of a court and jury. That this was not the best method to secure certainty of correct results must be conceded, but it was the only method provided, and under this assignment we will now consider the facts submitted for consideration, and see whether the verdict meets with adequate support. They will be better under-

stood by reference to the following map of Lincoln county, within which they all arose and the case was tried:

The plaintiff in this action was located at Chandler, the county seat of the county, engaged in the manufacture of cotton seed oil products. The towns from which it purchased the seed carried, over which this controversy arises, are Prague, Sparks, and Midlothian, all of which are located on the line of the railway of plaintiff in error. It will be noticed that this line crosses the line of the St. Louis & San Francisco Railway Company at a station named Warwick, which was the place where the cars containing the cotton seed were turned over to the St. Louis & San Francisco Railway Company for delivery to the consignee at Chandler. In the proof offered the plaintiff not only sought to show that the rate charged by the defendant was unreasonable, but also that it was discriminated against. For instance, from Midlothian to Warwick the distance is seven miles, and the company's rate per hundred pounds for this distance was 10 cents, while the rate from Midlothian to Guthrie, which was 38 miles distant through Warwick in the same

direction, was only 7½ cents per 100 pounds. The distance from Sparks to Warwick was 14 miles and the rate made was 12 cents per 100 pounds, and the distance from Sparks to Guthrie in the same direction and through the town of Warwick was 45 miles, and the rate made was but 8 cents per 100 pounds. The distance from Prague to Warwick is 27 miles, and the rate is 15 cents per 100 pounds, while the distance from Prague to Guthrie through Warwick and in the same direction is 58 miles, and the rate made was 8½ cents per 100 pounds. It was also made to appear in the evidence, as will be seen by the map, that the county is crossed by the Chicago, Rock Island & Pacific Railway, by the St. Louis & San Francisco Railway, and by the Missouri, Kansas & Texas Railway. The greatest distance which any cotton seed purchased by plaintiff and transported over the line of the defendant company traveled on its line was 27 miles, which was from Prague to Warwick. All of the three railway companies above mentioned had a uniform schedule of rates obtaining at that time and in that county on cotton seed in car load lots, which was 7 cents for transporting it a distance of 30 miles. It is argued, therefore, on the part of plaintiff, that, while there is no fixed rule to determine a reasonable charge in all cases, still, if all the other railways of that county would have hauled this commodity for the distance covered at 7 cents, that it was unreasonable to charge the plaintiff rates of 10, 12, and 15 cents per 100 pounds over the same or lesser distance. The company on its part argues that a rate might be reasonable on one line and unreasonable on another, because of difference in their situation; for instance, it contends that a company could afford to haul the raw material on its line where factories are established and where it would not only haul the raw material, but also secure the finished product, at a very much less rate than it could afford to haul the raw material only. That in addition to this, competitive points must be taken into consideration—that Guthrie is a competing point, and that there is also located there cotton seed oil mills where defendant would have had its fair opportunity of transporting the finished product after delivering the cotton seed, and

that, in order to secure the patronage of those who desired to transport the finished product, it could afford to haul the raw material even at less than what would otherwise be a reasonable rate for this service, and that such an adjustment of rates was neither unreasonable on its part nor a discrimination against plaintiff. It showed that, when the cotton seed was delivered at Chandler and there manufactured, it was off its line, and it was not given the finished product to haul, and in this way justified the rate made to the junction station, Warwick. Evidence was also introduced showing that the company had not done a profitable business, but had, in fact, lost money in its operations. All of these matters along with some other considerations were submitted to the jury under instructions with which the defendant finds no fault. The facts established by both parties were virtually undisputed, and it was left to the jury to say whether or not under all the circumstances the charge made by defendant was reasonable, and we, after a full and careful consideration of the entire case, are not able to say that the conclusion reached was not fairly and reasonably sustained by the evidence. *Kuhl v. Supreme Lodge, Select Knights and Ladies,* 18 Okla. 383, 89 Pac. 1126.

Therefore, finding no error in the cause, the judgment of the trial court is affirmed.

All the Justices concur.