## CHICAGO, R. I. & P. RY. CO. v. BROWN.

No. 12556—Opinion Filed May 13, 1924.

Rehearing Denied Dec. 23, 1924.

**Railroads—Intrastate Rates—Exclusive Jurisdiction of Corporation Commission.**

The Corporation Commission has the exclusive original jurisdiction to determine whether the rate charged by a railroad company for an intrastate shipment was reasonable or unreasonable, and a district court is without jurisdiction to entertain an action to determine what constitutes a reasonable charge for such shipment or to recover the excess above such rate as determined by such court to be a reasonable rate.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Coal County; J. H. Linebaugh, Judge.

Action by A. C. Brown against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Reversed, with directions to dismiss.

C. O. Blake, W. R. Bleakmore, A. T. Boys, and W. F. Collins, for plaintiff in error.

George Trice and Denver Davison, for defendant in error.

Opinion by RAY, C. A. C. Brown commenced this action against the Chicago, Rock Island & Pacific Railway Company July 18, 1917, to recover for excess freight charged on 136 carloads of mine props shipped from Blanco to Alderson in Pittsburg county, a distance of less than 20 miles, between December 11, 1912, and September 2, 1915, upon the ground that the 5c per hundred weight charged by the defendant, and paid by the plaintiff under protest, was unjust and unreasonable; that 3c per hundred weight between the two stations would have

been a reasonable compensation to defendant for such shipments. Trial was had to the court without a jury. The court found that the charges made by the defendant were unreasonable and that a charge of 4c per hundred weight on the freight shipped would have been a full and reasonable charge, and entered judgment against the defendant for $949.92, from which the defendant appeals and says that "The trial court was without jurisdiction of said cause and without power or authority to render any judgment therein against defendant." This contention is made upon the ground that the exclusive power to determine what constitutes a reasonable rate had been conferred upon the Corporation Commission by the Constitution and laws of the state, while the plaintiff contends that section 4881, Comp. Stat. 1921, stands unrepealed and confers the right to maintain the action. That section is as follows:

"A common carrier is entitled to a reasonable compensation and no more, which he may require to be paid in advance. If payment thereof is refused, he may refuse to carry."

By section 18, art. 9, of the Constitution, the Corporation Commission was given power and authority and charged with the duty of supervising, regulating, and controlling all transportation companies doing business in this state, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discriminations and extortions by such carriers. To that end the Commission, by that section, was required to prescribe and enforce against public carriers such rates, charges, classifications of traffic, and rules and regulations, and require them to establish and maintain all such public services, facilities, and conveniences, as reasonable and just, which rates, charges, classifications, rules, regulations, and requirements might be, from time to time, altered or amended. It also made all rates, charges, classifications, rules, and regulations adopted by any such company inconsistent with those prescribed by the Commission within the scope of its authority unlawful and void. It made the authority of the Commission paramount in prescribing rules, charges, and classifications of traffic subject to review on appeal and subject to regulation by law.

By section 20 an appeal to the Supreme Court of the state was provided from any action of the Commission prescribing rules, charges, or classifications of traffic. By section 21 all appeals affecting rates,

charges, or classifications of traffic were given precedence upon the docket of the Supreme Court and required to be heard and disposed of promptly, next after the habeas corpus and state cases already on the docket of the court. Section 20 provided that no court of this state (except the Supreme Court, by way of appeals) should have jurisdiction to review, reverse, correct, or annul any action of the Commission within the scope of its authority, or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the Commission in the performance of its official duties except that the writs of mandamus and prohibition should lie from the Supreme Court to the Commission in all cases where such writs, respectively, would lie to any inferior court or officer.

By section 35 the Legislature was given the power to alter, amend, revise, or repeal any of the sections above referred to after the 2nd Monday in January, 1909, but the Legislature has never abrogated or limited any of the powers conferred by these sections, but on the contrary, has enlarged those powers. By the act of 1913, sections 3470 and 3471, Comp. Stat. 1921, the Commission was vested with the power of a court of record to determine the amount of any refund due because of any charges in excess of the lawful rate in force at the time the charge was made, or above what might thereafter be declared to be the legal rate which should have been applied, and was given authority to render judgment for the amount of such overcharge which should become a lien upon the property of the corporation making such overcharge, and was given power to make collection and make payment to the parties to whom due. Section 4881, relied upon by plaintiff, is a statutory enactment of the common law as pointed out in Fort Smith & W. R. Co. v. Chandler Cotton Oil Co., 25 Okla. 82, 106 Pac. 10. At common law, the method here pursued was the only remedy for the recovery of an overcharge by a transportation company. If the shipper felt aggrieved his remedy was an action at law to recover the excess above a reasonable charge. Whether it was an unreasonable charge was for the court and jury to determine. This furnished no sufficient guarantee that all patrons would receive the same rates and treatment. In fact, it was a guarantee that they would not for it was impossible for all courts and all juries to see alike. It has always been held that carriers were entitled to receive sufficient compensation for reasonable income on the investment. When one received a rate or charge less than required to make that reasonable income, whether by favoritism on the part of the carrier, or by the action of a court and jury, it was of necessity required to be made good by other patrons of the carrier. Those were some of the conditions sought to be remedied by the sections of the Constitution referred to. To that end the Commission was given the right, at all times, to inspect the books of all transportation companies doing business in this state and require from them, from time to time, special reports and statements under oath concerning their business. The Commission was required to keep itself fully informed of the physical condition of all the railroads of the state, and as to the manner of their operation with reference to the security and accommodation of the public, and from time to time make and enforce such requirements, rules and regulations as necessary to prevent unjust or unreasonable discrimination and extortion in favor of or against any person, locality, community, connecting line, or kind of traffic, in the matter of car service, train schedule, efficiency of transportation, or otherwise, in connection with the public duties of such carriers. The Commission was furnished all facilities for acquiring and preserving this needful information, and a corps of experts in the different lines to classify and so apply such information as to guarantee that the carriers should furnish security and accommodations to the public, and to prevent unjust or unreasonable discrimination and extortion in favor of, or against, any person, locality, community, connecting line, or kind of traffic, in the matter of car service, train schedule, efficiency of transportation, or otherwise, in connection with their public duties as such carriers. When the Commission came into existence under the authority of the Constitution, with the great power conferred upon it, it required all carriers to file tariffs of rates and classifications. They were recognized as the proper rates and classifications until changed by authority of the Commission or different tariffs filed. By order No. 320, made May 2, 1910, carriers were prohibited from charging, collecting, and receiving any amounts for their services other than the published rates, or such rates as were on file with the Commission. This order was, in effect, an inhibition against charging either more or less than the fixed rate. That was to prevent unjust or unreasonable discriminations or extortions in favor of or against any person, locality, connecting line, or kind of traffic as required by the Constitution. By order No. 516, effective September 30, 1911, the rates and classifications for forest prod-

ucts were fixed, but mine props were not specifically mentioned. The railroad company, in the instant case, gave mine props the lowest rate fixed in the order, (with the exception of fence posts, excelsior bolts, and cord wood, specifically mentioned in the order) that of lumber of 5 cents per 100 pounds for a distance of less than 20 miles. No specific classification or rate to be charged for mine props was made until May 1, 1916. In the meantime, and during the time of the shipments and charges made here complained of, the railroad company charged and collected for mine props upon the rate and classification of lumber. March 18, 1916, by order No. 1032, after a hearing, the commission ordered that the same rate be applied to mine props as to fence posts, which was 80 per cent. of the lumber rate, or 4 cents per 100 pounds for less than 20 miles, to take effect May 1, 1916. This suit was commenced after the 4 cent rate went into effect. Whether or not plaintiff could have recovered if he had sued for the excess above the 4 cent rate fixed by the Commission as reasonable, is not before us and not decided. But this is not such an action. Plaintiff does not seek to recover the excess charge above the rate fixed by the Commission as a reasonable rate, but to recover the excess above a reasonable rate to be determined by the court and jury, alleged in the petition to be 3 cents per one hundred pounds or one cent less than the reasonable rate as fixed by the Commission. He does not rely upon or recognize the reasonable rate fixed after a hearing, with full knowledge of the investment upon which a reasonable return must be had and the class and character of the service required, and fixed for the purpose of serving the public as a whole to the best advantage, but seeks rather to have the court and jury determine that reasonable rate upon such evidence as he shall present for their consideration. To hold that such an action can be maintained would be to hold that the Commission is not clothed with exclusive power to supervise and control transportation in this state and prevent discriminations and extortions as provided in the Constitution, but that that power was shared by the courts and juries of the state. If the Commission has not the exclusive power to prescribe and enforce the rates for transportation, then it does not have the power to prevent discriminations and extortions as between persons, localities, communities, connecting lines, or kinds of traffic. If a court and jury have the power in one case, or in one district, to say what constitutes a reasonable charge for a particular service, then another court and jury in another case, or another district, have

the power to fix a different rate for the same service or the same rate for a different service. If the several district courts of this state have power to determine what constitutes a reasonable charge for the services performed independent of the rate fixed by the Commission, or independent of the Commission's power to fix such rate, then the Commission is without power to give rates and classifications a uniform application. It is then without the power to protect against discriminations and extortions as between individuals, communities, connecting lines, and kinds of traffic. Its great facilities for acquiring information, and its experts in the different lines, are for no purpose. The Commission is robbed of its power to carry out the purposes for which it was created. It is, in principle, a return to the conditions which existed before the Commission was created. It is to determine the reasonableness of a charge made by a carrier after the services have been performed, the charges made and the compensation collected, instead of before the services were performed, as contemplated in these sections of the Constitution. It takes from the Commission the power to prevent future abuses. In short, it means the Commission is without power to perform the various services for which it was created. Such contention is not tenable. The Commission is clothed by the Constitution and laws of this state with exclusive rate making power and the court was without jurisdiction to entertain the action or enter the judgment in this case.

This conclusion is sustained by authority as well as reason. The United States Supreme Court, in the case of Texas & Pacific Railway Company v. Abilene Cotton Oil Company, 204 U. S. 426, held that the shipper could not recover for an excess charge above a reasonable rate until the Interstate Commerce Commission had first determined what constituted a reasonable rate. It was so held notwithstanding the Interstate Commerce Act in specific terms provided that the act should not abridge or alter remedies existing at common law or by statute in these words:

"Nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies." U. S. Comp. Stat. sec. 8595.

It was so held because a right to maintain the action to determine the reasonableness of the charge was inconsistent with the power of the Commission to make rates of general application, to make reparation

for unlawful charges, and to require the shipper to abstain from future abuses.

It is contended on the part of the plaintiff that there was no rate for mine props at the time of the charge complained of. With this contention we cannot agree. In order No. 1032 the Commission recognized the rate of 5c per 100 pounds on mine props to be in effect. It said:

"The rates now in effect are the same as the lumber rate established by this Commission under Order No. 516."

And again it said:

"The Commission finds that the present lumber rate on mine props is too high."

We think the rate was in effect not only because the Commission so recognized, but because that interpretation of order No. 516 is justified. When plaintiff sought to have the court establish a different rate, as a reasonable rate for the services performed, he sought to have the court establish a different rate from that fixed by the Commission.

Plaintiff cites Fort Smith & W. R. Co. v. Chandler Cotton Oil Company, 25 Okla. 82, 106 Pac. 10, and M., K. & T. Railway Company v. New Era Milling Co., 79 Kan. 435. We think these cases are not applicable. The Oklahoma case arose out of a transaction occurring prior to statehood and therefore prior to the creation of the Commission. While there was a Commission with rate making power in Kansas at the time of the transaction involved in the Kansas case referred to, the action was not to have the court determine a reasonable charge for the services performed but was to recover an excess charge above the published tariff.

Plaintiff, in his brief, appears to make a point of the fact that what the court held to be a reasonable charge for the services performed was the same as that fixed by the Commission in order No. 1032. But that avails nothing. The question being considered is the power of the court to determine what constituted a reasonable charge. If it had the power to determine what constituted a reasonable charge, then it was not bound by the finding of the Commission.

We think the court was without jurisdiction to determine the questions involved and, therefore, the judgment should be reversed with directions to dismiss the action.

By the Court: It is so ordered.