**TELECO, INC., a corporation, Plaintiff-Appellant,**

v.

**SOUTHWESTERN BELL TELE- PHONE COMPANY, a corporation, Defendant-Appellee.**

No. 74–1162.

United States Court of Appeals, Tenth Circuit.

Argued Oct. 23, 1974.

Decided Feb. 24, 1975.

Collier H. Pate, of Eagleton, Nicholson & Pate, Oklahoma City, Okl., for appellant.

Robert D. Allen, Oklahoma City, Okl. (William J. Free, Nancy Batchelor and O. Carey Epps, Oklahoma City, Okl., on the brief), for appellee.

Before LEWIS, Chief Judge, and PICKETT and McWILLIAMS, Circuit Judges.

LEWIS, Chief Judge.

Teleco, Inc., an Oklahoma corporation, appeals from a summary judgment entered in the United States District Court for the Western District of Oklahoma dismissing this diversity action against Southwestern Bell Telephone Company, a Missouri corporation, for breach of contract and tortious conversion of its property. We affirm the judgment of the district court.

Southwestern Bell supplies telephone service to the public in Oklahoma under tariffs filed with the Oklahoma Corporation Commission. Teleco, which is engaged in the business of selling electronic telephone answering and recording equipment, is one of Southwestern Bell's customers. In 1972, Teleco connected its own telephone equipment to Southwestern Bell's telephone network by means of a "direct electrical connection." Southwestern Bell advised Teleco that such direct connections with its system violated tariffs that permit private connections other than inductive or acoustic connections only by means of a coupler installed by Southwestern Bell.[1] The

---

1. The pertinent section of Oklahoma's General Exchange Tariff, effective April 1, 1969, provides:

Customer-provided and maintained systems may be connected at a service point of the customer, on a voice grade basis, with ex-

latter requested Teleco to cease its violation of these "foreign attachment" tariffs, but Teleco refused. Southwestern Bell then gave Teleco ten days' written notice that its telephone service would be cut off unless Teleco complied with the tariffs. Teleco refused to comply. On July 14, 1972, Southwestern Bell suspended service. Five days thereafter the parties resolved their dispute in a written agreement; on July 19, 1972, telephone service was resumed and has not since been interrupted.

Teleco brought two state court actions against Southwestern Bell, the first predicated on a breach of contract theory and the second upon the theory that Southwestern Bell had tortiously converted Teleco's property. Both actions arose from Southwestern Bell's five-day suspension of service; the sole relief sought was monetary damages. Southwestern Bell removed both actions to the United States District Court, which consolidated them for trial. The district court granted summary judgment for Southwestern Bell as to Teleco's conversion claim for three reasons. First, since telephone service is not personal property, it cannot be the subject of a tortious conversion. Second, since the telephone company never took physical possession of or exercised dominion over Teleco's equipment, it cannot be said to have converted Teleco's property. Third, Southwestern Bell's interruption of service, whether or not characterized as an act of dominion over Teleco's personalty, was not wrongful since the utility acted in accordance with tariffs filed with the Oklahoma Corporation Commission.

Teleco does not apparently press the conversion issue in this appeal. Accordingly, we merely note that the district court's conclusions are fully supported by Oklahoma law. See Benton v. Ortenberger, 371 P.2d 715 (Okl.).

Teleco's second claim is that, by interrupting Teleco's telephone service, Southwestern Bell breached its contract for service with Teleco. Southwestern Bell replies that Teleco's compliance with tariffs governing the responsibilities of telephone customers constituted a condition precedent to the utility's continuing obligation to provide service.[2] Since Teleco concedes having violated the foreign attachment tariffs, Southwestern Bell argues that it was entitled to discontinue service to Teleco. In this appeal, however, Teleco contends that for reasons discussed below Southwestern Bell cannot offer Teleco's tariff violation as a defense to breach of the service contract.

Teleco first contends that Southwestern Bell deprived Teleco of its fourteenth amendment rights to procedural due process by interrupting its telephone service without a hearing. This argument fails under the rule recently announced in Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477. There the Supreme Court held that the state of Pennsylvania was not sufficiently connected with a power company's termination of service to a customer as to entitle the customer to the procedural rights guaranteed against state action by the fourteenth amendment. The Court significantly noted that although the power company may have been required by Pennsylvania law

change and long distance message telecommunications service either through a network control signaling unit and connecting arrangement, furnished, installed and maintained by the Telephone Company or through customer-provided equipment which affects such connections externally to a Telephone Company network control signaling unit by means of an acoustic or inductive connection for transmitting and/or receiving. . . .

Other provisions of the General Exchange Tariff prohibit connections not authorized elsewhere in the Tariff. These provisions entitle the utility to discontinue the telephone service of persons making unauthorized attachments or connections.

2. The Oklahoma Corporation Commission's rules and regulations governing public telephone service provide that duly filed tariffs are binding upon both the telephone company and the public. Order No. 68516, Rule 1. See also Southwestern Bell Telephone Co. v. Cox, 375 P.2d 972 (Okl.). The General Exchange Tariff provides: "The Telephone Company may discontinue service which is used: . . . f. In a manner which violates any of the lawful regulations of the Telephone Company."

to obtain state approval of the practices that precipitated the customer's termination, the state's regulatory body did not "put its own weight on the side of the proposed practice by ordering it." 419 U.S. at 357, 95 S.Ct. at 456. In *Jackson* as in the present case, the challenged tariffs became effective automatically after the utility had filed them with the state regulatory agency for a specified period without objection. *See* Okla. Const. art. 9, § 18; Okla. Corporation Commission Order No. 68516, Rule 1. Thus, the actual involvement of the state in the promulgation of tariffs is the same as at issue in *Jackson*. For these reasons we believe that *Jackson* applies to the present case and that Southwestern Bell's interruption of service to Teleco did not amount to state action as contemplated by the fourteenth amendment.

■■■ Teleco next argues that the manner in which Southwestern Bell's foreign attachment tariffs were promulgated violated its rights to due process. Without reference to any authority, Teleco generally asserts that it was entitled to "extensive" notice of the filed tariffs and that failure to provide it with such notice infringed upon its rights. Rules of the Oklahoma Corporation Commission provide that tariffs become effective thirty days after they are filed with the Commission and absent rejection from the Commission. Order No. 68516, Rule 1. The Commission's rules, however, do not require notice to the public or to interested parties. Teleco concedes that the foreign attachment tariffs were filed in accordance with Commission rules. In adopting rules governing service, the Corporation Commission exercises a delegated legislative function and does not adjudicate factual disputes so as to invoke the due process requirements of notice and hearing. Wood v. Public Utilities Commission, 4 Cal.3d 288, 93 Cal.Rptr. 455, 481 P.2d 823, 825 (Cal.), appeal dismissed, 404 U.S. 931, 92 S.Ct. 293, 30 L.Ed.2d 245. See also Mississippi Fuel Corp. v. F. P. C., 108 U.S.App.D.C. 284, 281 F.2d 919, 927; Sun Oil Co. v. F. P. C., 5 Cir., 256 F.2d 233, 240–41; K.

Davis, Administrative Law Treatise § 7.02 et seq. (1958). Accordingly, Teleco was not denied due process in the utility's promulgation of its foreign attachment tariffs.

■■■ Teleco also argues that Southwestern Bell waived its right to enforce the foreign attachment tariffs by reason of alleged lengthy prior notice of Teleco's direct connection to the Southwestern Bell network. Teleco relies upon the general rule that a party to a contract may waive a right thereunder by conduct indicating an intention to relinquish it. *See* Steiger v. Commerce Acceptance, Inc., 455 P.2d 81, 89 (Okl.). We agree with the trial court that the general rule of waiver does not apply where, as here, a party's obligations are subject to approval and regulation by the state's corporation commission. Under Oklahoma law, tariffs required to be filed with a regulatory body are more than merely the terms of contract between the regulated utility and its customers; they are the law. *See* Shehi v. Southwestern Bell Telephone Co., 10 Cir., 382 F.2d 627, 629 n. 2. Since the public has the right to nondiscriminatory application of such tariffs, Okla.Const. art. 9, § 18; AAAA-AAAAAAAAAAAAAAAAAAAA, Inc. v. Southwestern Bell Telephone Co., 373 P.2d 31 (Okl.), the utility cannot be held to waive enforcement as to some, but not to others of its customers. *See* Komatz Construction Co. v. Western Union Tel. Co., 290 Minn. 129, 186 N.W.2d 691, 698; *see also* Chicago, B. & O. Ry. v. Ready Mixed Concrete Co., 8 Cir., 487 F.2d 1263, 1266; Atchison, T. & S.F. Ry. v. John Sexton & Co., D.Kan., 339 F.Supp. 1202, 1206. Were we to hold otherwise we would defeat the equal enforcement of filed tariffs in violation of strong state policy to the contrary.

Teleco next contends that Southwestern Bell arbitrarily refused to install an electronic coupling device at Teleco's facilities. Had Southwestern Bell provided Teleco with the device as requested, Teleco argues, its own direct electrical connection in violation of the tariffs would have been unnecessary. South-

western Bell replies that filed tariffs require the imposition of installation charges and a monthly use charge to customers wishing to connect privately-owned telephone equipment to the utility's network. Teleco advised Southwestern Bell that it would not pay these charges; Southwestern Bell refused to install the couplers until Teleco agreed to pay. The court below held on the basis of these undisputed facts that Southwestern Bell acted neither arbitrarily nor wrongfully in refusing to install a connecting device for Teleco.

■ Tariffs duly filed with the Corporation Commission bind both the utility and its customers. *See* Southwestern Bell Telephone Co. v. Cox, 375 P.2d 972 (Okl.). Teleco does not apparently dispute the applicability of the tariff-specified charges to its desired connection. Had Southwestern Bell therefore *not* insisted upon imposing charges for connection and coupler service, the utility would itself have violated the tariffs. Under these circumstances, the trial court correctly concluded as a matter of law that Southwestern Bell's refusal to provide service was neither arbitrary nor otherwise wrongful.

■ Finally, Teleco argues generally that Southwestern Bell's tariffs, including its foreign attachment tariffs, are unreasonable and unenforceable on a uniform basis; for these reasons, Teleco contends, the utility's enforcement of the tariffs against Teleco was wrongful. These contentions should be directed to the Oklahoma Corporation Commission, and not to the courts. The Oklahoma Supreme Court has interpreted article 9, section 18 of the state's constitution as directing that whenever the "validity of any rate or regulation prescribed by the Corporation Commission" must be determined as a basis for relief, the state's district courts are "without power to grant relief and . . . without jurisdiction of the subject matter of the action." Oklahoma Natural Gas Co. v. Bartlett-Collins Co., 204 Okl. 379, 230 P.2d 481, 482. *See also* Chicago, R.I. & P. Ry. v. Brown, 105 Okl. 133, 232 P. 43.

Since state law precludes state trial court jurisdiction over questions concerning the validity of regulations approved by the Commission, federal district courts sitting in diversity similarly lack jurisdiction. *See* Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524; 1A J. Moore, Federal Practice ¶ 0.317[6] (2d ed. 1953). Thus the district court had no jurisdiction to determine the reasonableness of the tariffs challenged by Teleco.

The judgment of the district court is affirmed.