**ATCHISON, T. &. S. F. RY. CO. et al. v. STATE et al.**

No. 14946—Opinion Filed Oct. 6, 1925.

Rehearing Denied Dec. 1, 1925.

**1. Corporation Commission—Orders—Special Rates—Review—Trial De Novo.**

Where a proceeding is commenced before the Corporation Commission for the purpose of abrogating established and uniform rates and substituting therefor special rates in favor of complainant, on appeal from an order of the commission substituting such special rates the cause will be tried and determined de novo in this court on the pleading and evidence certified by the commission.

**2. Carriers — Establishment of Freight Rates by Corporation Commission—Uniform Application — Presumption of Reasonableness.**

Where effective and applicable freight rates on certain classes of commodities have been evolved by the Corporation Commission through years of study, after many hearings and by means of numerous adjustments and orders, and where such rates are uniform in their application throughout the state, such rates are legal rates under Const., art. 9, sec. 18, and the presumption exists that such rates are just, reasonable and correct.

**3. Same—Proceedings to Substitute Special Rate—Burden of Proof.**

In a proceeding brought to abrogate such legal rates and to substitute therefor special rates in favor of some particular person, corporation, or locality the burden rests upon complainant to establish that such uniform rates are unjust and unreasonable.

**4. Corporation Commission — Rate-Making as Legislative Function — Limitation on Power.**

The power to fix rates is a legislative function, and in the exercise of its delegated legislative power in this respect the Corporation Commission is subject to the same constitutional limitation as would bind the Legislature in enacting similar legislation under the provisions of Const. art. 5, sec. 59.

**5. Same—Power to Establish Special Rates.**

Under section 59, supra, where general and uniform rates can be made applicable, no special rates shall be established, the only other authority of the commission for establishing special rates being contained in and limited by the provisions of Const., art. 9, sec. 30.

**6. Same—Presumption Favoring Uniform Rather Than Special Rates.**

Where a special rate has been substituted in place of a general and uniform rate, no presumption exists in its favor for the reason that the law will not indulge conflicting presumptions, and the presumption that a general and uniform rate is just, reasonable, and correct is a superior and exclusive presumption.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Appeal by the Atchison, Topeka & Santa Fe Railway Company, Missouri, Kansas & Texas Railway Company, Missouri Pacific Railway Company, and St. Louis-San Francisco Railway Company, from an order of the Corporation Commission of the State of Oklahoma made and entered September 12,

1923, in favor of the Dewey Portland Cement Company, establishing special rates for shipments of slack and mine run coal from 13 shipping points in Rogers and Tulsa counties, Okla., to Dewey, Okla., said order being designated as order No. 2263. Order vacated, and cause reversed, with directions.

Cottingham & McInnis, W. L. Curtis, Stuart, Sharp & Cruce, and M. D. Green, for appellants.

Raymond W. Moore, A. Carey Hough, and Geo. A. Henshaw (Geo. F. Short, Atty. Gen., of counsel), for appellees.

Opinion by LOGSDON, C. Seven specifications of error are contained in the assignments of error in this case, but they are not presented and argued seriatim in the briefs and will not be so considered here. The gist of the argument for vacation of the order complained of is based on two propositions, thus stated in the second and fourth specifications of error:

"The Corporation Commission of Oklahoma erred in making said order No. 2263, and in each and every part thereof.

"Said order No. 2263, and each and every part thereof, is unreasonable, unjust and contrary to law."

These two propositions bring under review the entire record of the hearing, resulting in the order complained of, and will therefore be considered together in discussing the merits of this proceeding. The authority of this court in this character of proceeding is fully set out and defined in sections 20 to 23, inclusive, of article 9 of the Constitution, and the language there used, and necessary to be borne in mind in this discussion, is that portion of section 22 which reads:

"* * * The Supreme Court shall have jurisdiction, on such appeal, to consider and determine the reasonableness and justness of the action of the commission appealed from, as well as any other matter arising upon such appeal; provided, however, that the action of the commission appealed from shall be regarded as prima facie just, reasonable and correct. * * *"

Since the entire record is under review in this proceeding, the action of the Corporation Commission here complained of will be considered and discussed from the viewpoint of appellee's original complaint, upon the allegations of which the action of the Corporation Commission must necessarily have been based. These allegations may be fairly summarized, thus:

That the Dewey Portland Cement Company is a West Virginia corporation having its principal offices in Kansas City, Mo.; that during the year 1922, it purchased 76 carloads of coal from certain mines in Oklahoma group No. 3, for use in its plant at Dewey; that the freight rates charged by appellants on such shipments were the uniform rates then in effect for intrastate freight service on that class of commodities for like-hauls; that in cause No. 4056, and by order No. 1813, the Corporation Commission granted appellee a special freight rate on the same grades of coal shipped from Collinsville, Mohawk, Dawson, Rudd, and Broken Arrow to Dewey, and that this special rate was upheld by the Supreme Court in cause No. 12175; that the freight rates on the 76 cars of coal above mentioned were materially greater than the special rate granted by order No. 1813, and greater than the interstate rates which appellee pays on same grades of coal from mines in Southeastern Kansas and Southwestern Missouri; that on its finished product appellee has to meet the competition of cement mills at Iola and other points in the Kansas gas belt, and that these Oklahoma intrastate coal rates place an undue burden upon the finished product of appellee in its competition with these Kansas cement mills; that these Oklahoma intrastate coal rates are unjust and unreasonable; that appellee should be granted the same special rates from other shipping points in mining group No. 3 as were granted to it by order No. 1813; that refunds to the amount of $1.108.95 should also be ordered as to the 76 cars above mentioned by reason of the rates collected.

It has been determined by this court, that on appeal from an order of the Corporation Commission the cause will be tried de novo in this court upon the record and the evidence certified, and that this court will weigh all of the evidence in order to reach a correct conclusion. St. Louis-San Francisco Ry. Co. v. State, 81 Okla. 298, 198 Pac. 73. Atchison. T. & S. Ry. Co. v. State, 82 Okla. 288, 200 Pac. 232.

As the original complaint of appellee is an application to abrogate the established and effective uniform rates for freight service on that class of commodities performed wholly within the state of Oklahoma, and to substitute therefor a special rate, the first inquiry must logically be: Are the rates sought to be abrogated legal rates? If they should be found to be legal, then the sequent inquiry should be: Are they unjust and unreasonable, as alleged in the complaint?

A brief historical review gleaned from sources disclosed by this record may be helpful in this discussion. Prior to 1914, the cement plants in, Southeastern Kansas, in what is known as the "gas belt," used natural gas and oil for fuel in their operations, as did also the appellee at Dewey, 20 miles south of the Kansas-Oklahoma line. As the supply of this cheap fuel approached the point of exhaustion, it became necessary for all these plants to substitute coal for fuel purposes. The coal mines most accessible to the Kansas gas belt are those located in Cherokee and Crawford counties in Kansas, and in Barton county, Mo. The freight rates in force at that time from these mines into the Kansas gas belt were $1 on slack and $1.25 on mine run. On petition of the cement mills, the Kansas commission held a hearing and fixed the freight rates at 45 cents on slack and 55 cents on mine run coal from these mines into the Kansas gas belt. Thereupon, the railroads voluntarily extended these same rates to Dewey. Intrastate coal rates in Oklahoma at that time, as fixed by order No. 502 of the Corporation Commission, were substantially higher for the same grades of coal for similar distances than was this Kansas rate, which the roads had extended to Dewey. A cement mill at Ada then made application to the Corporation Commission to establish like rates for it from Oklahoma mines, involving substantially similar distance hauls under similar conditions. To obviate a possible disturbance of intrastate coal rates in Oklahoma under this application, the railroads sought to increase the interstate rates from Kansas and Missouri mines to Dewey to an amount approximately the same as the Oklahoma rate for like distances. This instant appellee protested this equalization of rates, and its protest was sustained by the Interstate Commerce Commission on April 6, 1914. On February 4, 1913, the Corporation Commission supplemented order No. 502 by order No. 670, which divided the coal mines of the state into six groups for the purpose of making uniform application of the basic rates to all mines in each group. Group No. 3 embraced all mines in Rogers and Tulsa counties. By successive orders during federal control of the railroads, the interstate rate to Dewey from these Kansas and Missouri mines was increased until on August 26, 1920, the rate on slack was $1.08 and on mine run $1.21½. The intrastate rates in Oklahoma from some of the mines in group No. 3 to Dewey were slightly higher. In cause No. 4056, before the Corporation Commission, the instant appellee selected five shipping points in group No. 3. which had the shortest and most direct haul to Dewey, and asked that the interstate rates of $1.08 and $1.21½ be applied to these points. This was done by order No. 1813 of the Corporation Commission, and this order was affirmed by this court in the case of Atchison, Topeka & Santa Fe Railway Co. v. State, 85 Okla. 223, 206 Pac. 236. This was a special rate granted to the instant appellee in that case, the uniform rate as to all other intrastate shippers not being disturbed. On July 1, 1922, a general reduction of freight rates on slack and mine run coal was put into effect all over the country, the Corporation Commission ordering it here, that new rate from the five points covered by order No. 1813 to Dewey being 97 cents and $1.10, respectively, on the two grades. Thereupon this instant proceeding was commenced by appellee before the Corporation Commission to have the other 13 shipping points in group No. 3 brought within the operation of the special rate fixed in order No. 1813, as further reduced on July 1, 1922.

Are the rates sought to be abrogated legal rates?

Prior to May 1, 1918, Southwestern Lines Tariff No. 83-A, and the supplements thereto, prescribed the rates to be applied upon this class of intrastate traffic. These rates were recognized as the legal and effective rates by the Corporation Commission in its order No. 1403, issued on that date. By this order, effective May 10, 1918, the Corporation Commission granted "an advance of 15 cents per ton over rates prescribed in Southwestern Lines Tariff No. 83-A, and supplements thereto." The Director General increased these rates during federal control of the railroads, and upon the termination of the "guarantee period" after the cessation of federal control, the Corporation Commission by its order No. 1781, effective September 10, 1920, granted a further increase of 35 per cent., and by order No. 2070, effective July 1, 1922, the rates established by order No. 1781 were reduced 10 per cent. These rates fixed by order No. 1781, as amended by order No. 2070, were the effective rates on all freight of the classes here involved moving wholly within the state at the dates of the various shipments involved in this proceeding, with the exception of the five shipping points covered by the special rate in favor of appellee in order No. 1813. It is thus clear that the rates sought to be abrogated are legal rates, established and promulgated by

lawful and constitutional authority. Being legal rates, they were properly applied to the traffic here involved unless the second question heretofore stated should be resolved in the affirmative. That question is:

"Are those rates unjust and unreasonable, as alleged in the complaint?"

Slightly paraphrasing the language of Mr. Justice Hughes in the case of Houston & Texas Ry. v. United States, 234 U. S. 342, "there is no reason to doubt that it is the duty of the Corporation Commission to keep the highways of communication within the state open to intrastate traffic upon fair and equal terms. That an unjust discrimination in the rates of a carrier, by which one person or locality is unduly favored against another under substantially similar condition of traffic, constitutes an evil is undeniable."

The power to fix rates is an attribute of the state's sovereignty, expressly reserved in the fundamental law, and its exercise is a legislative function. But the power of the state to legislate is circumscribed by that same fundamental law. Const., art. 5, sec. 59, provides:

"Laws of a general nature shall have a uniform operation throughout the state, **and where a general law can be made applicable, no special law shall be enacted.**"

Rates and orders established and promulgated by the Corporation Commission in its delegated legislative capacity have the force and effect of other legislative enactments, but like the Legislature, its power is limited by the above constitutional provision. Atchison, T & S. F. R. Co. v. Corporation Commission. 68 Okla. 11, 170 Pac. 1156; Oklahoma City v. Corporation Commission, 80 Okla. 194, 195 Pac. 498; Planters Cotton Co. v. West Bros., 82 Okla. 145, 198 Pac. 855.

The rates sought to be abrogated in favor of appellee as to the 13 shipping points involved are the uniform rates applicable throughout the state, established by mandate of section 59, supra, and their reasonableness as uniform rates has been evolved by the Corporation Commission through years of study after many hearings, and by means of numerous adjustments and orders. All of these orders were made and entered after full hearings, and by mandate of the Const.. art. 9. sec. 22, must be regarded "as prima facie just, reasonable, and correct," because general in their nature and of uniform application throughout the state, in conformity to section 59, supra.

In a proceeding to abrogate such rates,

the burden rests upon the one assailing them to show wherein they are unjust and unreasonable.

The gist of appellee's complaint before the Corporation Commission was that this uniform intrastate rate, being higher than the interstate rate which it enjoys from the Kansas and Missouri mines, and higher than the special rate accorded it by order No. 1813, places an undue burden on its finished product which is not borne by the cement mills in the Kansas gas belt with which it is in competition. It was not alleged nor proven that its fuel needs could not be fully supplied from the mines covered by I. C. C. order in I. and S. Docket No. 338, and the mines covered by Corporation Commission order No. 1813. As to all of the mines covered by these two orders appellee enjoys the same rates as its alleged competitors in the Kansas gas belt. The keen edge of this competition is somewhat dulled by the testimony taken before, and the report made by the Joint Committee of the Senate and House of the Ninth Legislature under date of February 26, 1923, under authority of House Concurrent Resolution No. 3. This report was introduced in evidence and is a part of the record in this proceeding. As a part of its findings the committee said:

"We find that a large majority of all of the cement plants in the United States are controlled by four large holding companies, or corporations, * * * The Dewey plant is independently owned, but operates in co-operation with the four large holding companies, which four large holding companies are practically a trust within themselves, and to all intents and purposes the Dewey plant is in complete accord and unison with the cement trust, and at all times makes the same price for their product as that fixed by the trust. * * * We find that the present Iola price per barrel, which is therefore the price made by the Ada plant and the Dewey plant, is about $2.65 per barrel. f. o. b. Ada and f. o. b. Dewey, including sacks. * * *"

That appellee is not dependent on these 13 shipping points for its fuel supply is disclosed by the record, thus: Its consumption of coal during 1922 was approximately 60,000 tons. To secure this supply it took coal from only six of the 13 points involved. From these six it took 15,289.71 tons, 12,161.86 tons of this total coming from Tulsa alone, and only 3,127.85 tons coming from the other five. From seven of the 13 points it took no coal at all.

In order No. 1403, re-establishing the old

group basis, the Corporation Commission, adopting the language of Mr. Rudowski, said:

"It is, therefore, self-evident that it is of vital importance that all mines in the same district producing the same grade of coal be kept on a parity as to freight rates to enable each to get its share of the tonage available, **and to insure dealers being placed on an equal footing and that the public may secure the benefit on the lowest possible price basis.**"

This language, used during the operations of the Fuel Administration, clearly implies the detriment to the public at large which results from discriminatory and preferential rates, and is as true now as it was then. Therefore, any use of the group system for the purpose of establishing a discriminatory or preferential rate in favor of one or more consumers, or to the detriment of other consumers, by creating a virtual monopoly in favor of one or more consumers in the output of any one or group of mines, would be in violation of the purpose and intent of order No. 670, as declared and expressed in order No: 1403. It would likewise be in violation of express constitutional inhibitions.

Since it is neither obligatory nor commercially essential that appellee shall depend on the mines tributary to the 13 shipping points here involved for its coal supply, and since the general and uniform rates on coal from the said 13 shipping points do not, in and of themselves, place an undue burden on the finished product of appellee, as substantially alleged in its complaint, nor disadvantageously affect the interstate rates accorded to it, there is nothing to justify an interference with such rates unless it can be found in the constitutional authority of the Corporation Commission to establish special rates in certain prescribed instances. That power, and the limitations on its exercise, is defined by Const., art. 5, sec. 59, supra, and by Const., art 9 sec. 30, which reads:

"No transportation or transmission company shall charge or receive any greater compensation, in the aggregate, for transporting the same class of passengers or property, or the transmitting of the same class of messages, over a shorter than a longer distance, along the same line and in the same direction—the shorter being included in the longer distance; but this section shall not be construed as authorizing any such company to charge or receive as great compensation for a shorter as for a longer distance. The commission may, from time to time, author-

ize any such company to disregard the foregoing provisions of this section, by charging such rates as the commission may prescribe as just and equitable between such company and the public, to or from any junctional or competitive points or localities, or where the competition of points located without this state may make necessary the prescribing of special rates for the protection of the commerce of this state. * * *"

No duty is enjoined upon the Corporation Commission by this section to establish special and preferential rates in favor of any person, corporation, or locality, but permission to do so is granted under certain conditions. By section 59, supra, special rates are legal only where general rates cannot be made applicable. It is only where a duty is enjoined upon a public official that his acts are presumed to be regular in the performance of that duty. Board of Commissioners of Greer County v. Gregory, 15 Okla. 208, 81 Pac. 422; Southern Surety Co. v. Wait, 45 Okla. 513, 146 Pac. 431; Southwestern Surety Ins. Co. v. Davis, 53 Okla. 332, 156 Pac. 213; Board of Commissioners of Garfield County v. Field, 63 Okla. 80, 162 Pac. 733. Conflicting presumptions will not be indulged, and since the general and uniform rate assailed is supported by the presumption that it is "prima facie just, reasonable and correct," a special rate in conflict therewith is not supported by a like presumption. That the interstate freight rates on the finished product of appellee, as compared with its competitors in the Kansas gas belt, do not "make necessary the prescribing of special rates" in its favor is also fully disclosed by this record. Dewey is about 20 miles south of the Kansas-Oklahoma line, while Iola is about 65 miles north of that line, yet as far north as Sioux Falls, S. D.; as far east as Memphis, Tenn.; as far south as San Antonio, Tex., and as far west as Denver, Colo., the carload rate on cement is the same from both of these points. There is no evidence in the record which overcomes the presumption that the rates assailed by the complaint in this proceeding are "just, reasonable and correct." and the evidence is wholly insufficient to establish the necessity of "prescribing special rates for the protection of the commerce of this state."

Great reliance is placed in support of the complaint and order in this proceeding upon the case of Atchison, T. & S. F. R. Co. v. State, 85 Okla. 223, 206 Pac. 236. That is the case upholding the special rate granted to appellee by order No. 1813. However, in that case Justice Miller stated:

"The evidence introduced clearly sustains

·the findings of facts made by the Corporation Commission."

Such is not the case here presented, since both the evidence and the legal presumption ·in the instant case preponderate in favor of the general and uniform rates assailed, while there is an entire absence both of preponderating evidence and presumption to sustain the special rate granted by the instant order No. 2263.

It follows from what has been said that the portion of order No. 2263, granting reparations on the 76 cars of coal purchased by appellee during 1922, and here involved, is erroneous.

In conformity with Const., art. 9, sec. 23, the following is substituted for order No. 2263, as being a proper order to be entered in this proceeding:

"The commission finds from the pleadings, exhibits, and oral testimony in this case, that upon each and every of the 76 carloads of coal described in the complaint, the rate applied was the uniform rate prescribed for shipments of slack and mine run coal, respectively, moving intrastate, such rates being applicable throughout the state of Oklahoma, and that said rates so charged on said 76 cars of coal were not disproportionate to the rates charged to other shippers within the state upon the same class of commodities and for similar distance hauls under like conditions.

"The commission further finds that the application of complainant for the establishment of a special rate on slack and mine run coal from the 13 points in group No. 3, named in the complaint, is not supported by the evidence as to the necessity for prescribing special rates, as authorized to be done under certain conditions specified in section 30, art. 9 of the Constitution of the state of Oklahoma, and that such application should therefore be denied.

"It is the further finding of the commission that the rates and charges here complained of as to the 76 cars of coal described in the complaint and exhibits, having been charged and collected in conformity to the applicable tariffs in force and effective at the dates of the various shipments, such charges so made and so collected were not unjust nor unreasonable, but were the rates and charges lawfully due for such service.

"It is therefore ordered that the application of complainant for the establishment of a special rate in its favor on shipments of slack, and mine run coal from Owasso, Tulsa, Wear. Talala Oologah, Segeeyah, Claremore, Inola, Rice, Catoosa, Sequoyah, Chelsea, and Catale to Dewey, Okla., substantially lower than the rates and charges on the same grades and classes of commodities accorded to other shippers within the

state of Oklahoma for similar distances and under like conditions be and the same is hereby denied and overruled.

"It is further ordered that the application of complainant for reparations on said 76 carloads of coal in the sum of $1,108.95 be and the same is hereby in all things denied and overruled, and this proceeding is ordered dismissed."

For the reasons herein stated, the action of the Corporation Commission in entering order No. 2263 is hereby reversed and, said order No. 2263 is vacated, with directions to the Corporation Commission to enter an order in conformity with the views herein expressed and with the substituted order above set forth.

By the Court: It is so ordered.

Note.—See under (1) 10 C. J. p. 438, § 686 (Anno.). (2) 10 C. J. 415, § 637. (3) 10 C. J. p. 427, § 667. (4) 10 C. J. p. 410, § 630 (Anno.); 12 C. J. p. 806, §237. (5) 10 C. J. p. 410, § 630 (Anno.). (6) 10 C. J. p. 418, § 637; 22 C. J. p. 157, § 88 (Anno.). See under (2, 3) anno. 15 L. R. A. (N. S.) 108; 25 L. R. A. (N. S.) 1001; L. R. A. 1915A, 57; 4 R. C. L. pp. 633, et seq.; 1 R. C. L. Supp. p. 1184; 5 R. C. L. Supp. p. 248. (4) anno. 32 L. R. A. (N. S.) 649; L. R. A. 1915C, 262; 4 R. C. L. p. 622; 1 R. C. L. Supp. p. 1181.