**ST. LOUIS- S. F. RY. CO. et al. v. STATE et al.**

No. 20652. Opinion Filed March 1, 1932.

O. E. Swan, E. T. Miller, and Cruce & Franklin, for appellants.

Thomas F. Shea, for appellees.

KORNEGAY, J. This is an appeal by the above named appellants from the action of the Corporation Commission, making an order that the appellants make reparation to various claimants, who had shipped some combination oil rigs over their respective roads. The appeal was lodged here August 20, 1929.

The record has been examined, and the briefs, each setting out statements of fact, and there is practically no difference in the statements of fact, and as the abridgment of the appellants is short and appears to be correct, we quote from appellants' brief, as follows:

"By order No. 2674 in cause 6019, shown at page 53 of the record, the Corporation Commission fixed the rates on both all steel and combination wood and steel derricks. These remained unchanged until the Commission made its order No. 3697 in cause No. 5956, shown at page 72 of the record, lowering the rates on all steel derricks, but not affecting the rates on combination wood and steel derricks. This order was immediately complied with by the carriers and a lower tariff placed in effect on all steel derricks. No further changes were made until order No. 4029 was made in this cause, effective December 15, 1927, changing the rate on combination wood and steel derricks from the rate theretofore fixed by order No. 2674, to the rate which had been fixed by the Commission for all steel derricks. Immediately upon the taking effect of this order, the carriers complied with same and placed the two commodities on the same rate. The reparation ordered in this case is based upon the charges on combination wood and steel derricks, as herein described, from the taking effect of order No. 3697, on January 13, 1927, up until the taking effect of order No. 4029 on December 15, 1927."

And at page 49, the following:

"It will be seen from the above orders and from the above testimony, that after order No. 2674 in cause No. 6019 was made, and under the authority of that order the carriers charged rates on both all steel derricks and combination wood and steel derricks, in accordance with the rates fixed in

that order, and that this continued until the making of order No. 3697 in cause No. 5956, which changed the rates on all steel derricks, but did not change the rates on combination wood and steel derricks. With reference to the last order, Mr. Walker, attorney for the Commission, at page 41 of the record, says:

" 'In cause No. 5956, the Commission issued order No. 3697, prescribing rates on steel derricks lower than the rates on oil well supplies. That order, No. 3697, was made in response to testimony of complainants that the carriers had made lower rates on steel derricks for interstate movements than the Oklahoma Commission had. At the time that case was heard, the complainants asked for the same rates or lower rates to be made on these combination derricks. The Commission denied that request for the reason—I think it stated for the reason—that there was nothing in the complaint involving these combination wood and steel derricks.'

"It will be seen from the above that at the time order No. 3697 was made, to wit, on the 23rd day of December, 1926, the Commission had before it not only the question of lowering the rates on all steel derricks, but the question of lowering the rate on combination wood and steel derricks. By that order it lowered the rates on all steel derricks, but refused to lower rates on the combination derricks for the reason that complainants had not asked for that relief in their complaint. Then it cannot be disputed that the old rate on combination derricks remained in effect after order No. 3697 was made lowering the rates on all steel derricks. If order No. 3697 had not been made, it follows that the same rates would have remained in effect on both character of derricks."

The question before us, then, is whether or not, after the Commission has made a rate, and it has been complied with by the carrier, and the goods hauled, and the collections made, it can later decide that the original rate allowed was excessive and require the carrier to refund. Natural justice would seem to require a negative answer. The Constitution of this state created the Corporation Commission, and section 18, article 9 of the Constitution is as follows:

"Sec. 18. Power of Commission—May Prescribe and Enforce Rates—Inspection of Books and Papers—Discrimination—Rates Fixed upon Notice—Objections—Authority of Commission Supreme—Rates under Local Franchise—May Arbitrate Controversies Between Company and Employees. The Commission shall have the power and authority and be charged with the duty of supervising, regulating, and controlling all transpor-

tation and transmission companies doing business in this state, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination, and extortion by such companies; and to that end the Commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations, and requirements, the Commission may, from time to time, alter or amend. All rates, charges, classifications, rules and regulations adopted, or acted upon by any such company, inconsistent with those prescribed by the Commission, within the scope of its authority, shall be unlawful and void. The Commission shall also have the right, at all times, to inspect the books and papers of all transportation and transmission companies doing business in this state, and to require from such companies, from time to time, special reports and statements, under oath, concerning their business; it shall keep itself fully informed of the physical condition of all the railroads of the state, as to the manner in which they are operated, with reference to the security and accommodation of the public, and shall, from time to time, make and enforce such requirements, rules, and regulations as may be necessary to prevent unjust or unreasonable discrimination and extortion by any transportation or transmission company in favor of, or against any person, locality, community, connecting line, or kind of traffic, in the matter of car service, train or boat schedule, efficiency of transportation, transmission, or otherwise, in connection with the public duties of such company. Before the Commission shall prescribe or fix any charge or classification of traffic, and before it shall make any order, rule, regulation, or requirement directed against any one or more companies by name, the company or companies to be affected by such rate, charge, classification, order, rule, regulation, or requirement, shall first be given, by the Commission, at least ten days' notice of the time and place, when and where the contemplated action in the premises will be considered and disposed of, and shall be afforded a reasonable opportunity to introduce evidence and to be heard thereon, to the end that justice may be done, and shall have process to enforce the attendance of witnesses; and before said Commission shall make or prescribe any general order, rule, regulation, or requirement, not directed against any specific company or companies by name, the contemplated general order, rule, regulation, or requirement shall first be published in substance, not

less than once a week, for four consecutive weeks, in one or more of the newspapers of general circulation published in the county in which the Capitol of this state may be located, together with the notice of the time and place, when and where the Commission will hear any objections which may be urged by any person interested, against the proposed order, rule, regulation, or requirement; and every such general order, rule, regulation, or requirement, made by the Commission, shall be published at length, for the time and in the manner above specified, before it shall go into effect, and shall also, so long as it remains in force, be published in each subsequent annual report of the Commission. The authority of the Commission (subject to review on appeal as hereinafter provided) to prescribe rates, charges, and classifications of traffic, for transportation and transmission companies, shall, subject to regulation by law, be paramount; but its authority to prescribe any other rules, regulations, or requirements for corporations or other persons shall be subject to the superior authority of the Legislature to legislate thereon by general laws: Provided, however, that nothing in this section shall impair the rights which have heretofore been, or may hereafter be, conferred by law upon the authorities of any city, town or county to prescribe rules, regulations, or rates of charges to be observed by any public service corporation in connection with any service performed by it under a municipal or county franchise granted by such city, town, or county, so far as such services may be wholly within the limits of the city, town, or county granting the franchise. Upon the request of the parties interested, it shall be the duty of the Commission, as far as possible, to effect, by mediation, the adjustment of claims, and the settlement of controversies, between transportation or transmission companies and their patrons or employees."

It will be observed that the term "prescribed" sometimes is used alone, and sometimes in the disjunctive with the word "fix." If we take the literal definition of the word "prescribed," in the language from which we took it, its meaning is "to write before." As defined by Webster's International Dictionary, its definition, as ordinarily used, is found in the second subdivision, which is as follows:

"2. To lay down authoritatively as a guide, direction, or rule of action: to impose as a peremptory order; to dictate; appoint; direct; ordain."

Section 23 of article 9, in express words, forbids an order to be retroactive. It is as follows:

"Sec. 23. Supreme Court May Fix New Rates on Appeal—Commission May Enforce Rates Pending Appeal. Whenever the court, upon appeal, shall reverse an order of the Commission affecting the rates, charges, or the classifications of traffic of any transportation or transmission company, it shall, at the same time, substitute therefor such orders as, in its opinion, the Commission should have made at the time of entering the order appealed from; otherwise the reversal order shall not be valid. Such substituted order shall have the same force and effect (and none other) as if it had been entered by the Commission at the time the original order appealed from was entered. The right of the Commission to prescribe and enforce rates, charges, classifications, rules and regulations affecting any or all actions of the Commission theretofore entered by it, and appealed from, but based upon circumstances or conditions different from those existing at the time the order appealed from was made, shall not be suspended or impaired by reason of the pendency of such appeal; but no order of the Commission, prescribing or altering such rates, charges, classifications, rules, or regulations, shall be retroactive."

In the present case, when the carrier collected the rate in performance of service, it collected the rate prescribed by the Commission. Later, on complaint of some of the shippers, the Commission did prescribe a rate, and dated it as of the time of the complaint being made. The Commission also found that the derrick of the kind that the shippers had been shipping was entitled to the rate on an all steel derrick, fixed by an order, which was made several months before the complaint was made. At that time a rate already fixed for the mixed derrick was allowed to stand. The reparation here asked for was ordered for shipments during the time prior to the filing of the complaint and after the rate was fixed on the all steel derrick, but while the rate prescribed by the Commission on the combination derrick was in force.

Some cases from this court have been cited by the appellants, and some by the appellees. The appellees contend that the cases relied on by them warrant the retroactive application. The cases relied on are not authority for that position. An analysis will show that the case of St. Louis-San Francisco v. State, 126 Okla. 287, 259 P. 230, was not a case where the carrier had followed the direction of the Commission and charged accordingly, but it and the other cases relied on were cases where it was a question of classification of commodities for freight purposes, not the making of a retroactive rate. The nearest case that we have found in our own reports upon the

proposition is a case decided by this court on September 18, 1923, with reference to a gas charge, Consumers Gas Co. v. Corporation Commission and Cities of Miami, Picher, Commerce, and Cardin v. Same, 95 Okla. 57, 219 P. 126. The point was there urged that, because the order was dated later than the time that the order required the rate to be put into operation, it was void. The court disposed of it, however, in the following language:

"If order No. 2051 was not actually made until the date it bears, it would be ineffective prior to its date, for by section 23 of article 9 of the Constitution, it is provided that no order of the Commission prescribing or altering rates shall be retroactive, but the supplemental order, above set out, shows that at the conclusion of the hearing, and at the time of the promulgation of the order fixing the 35 cent gate rate for the Quapaw Gas Company, the Commission announced and informed the parties to this appeal that the rate to be charged in the cities complaining would be increased 13 cents per M cubic feet, and that said increase would be effective on April 1, 1922; that before the Commission had prepared and filed a journal entry or order, it was invited by the citizens of such cities and towns to hold a meeting therein, for the purpose of discussing a new form of rate to be promulgated and tried out if the people so desired. Accordingly, a member of the Commission attended a meeting at Miami, on March 29, 1922, at which meeting the cities of Miami, Commerce, Cardin, and Picher, were represented and at which time the residents and citizens of said cities were informed that unless they desired the new form of rates there proposed, the rate would be not less than 63 cents per M cubic feet after April 1, 1922; that the Commission was later advised that said cities preferred the increased rate of 63 cents to the proposed rate, and that the Commission, on April 19, 1922, prepared and filed order No. 2051, prescribing the rate previously announced. Under these circumstances, we cannot say that the order was retroactive. It was in fact made prior to April 1st, and the parties knew that it was to become effective on that date. Had the Commission dated its order back to April 1st, no valid objection could have been made thereto, and the mere fact that the Commission reduced to writing, and dated the order on April 19th, will not render it inoperative prior to that time."

No reference is made there, however. to the Session Laws of 1913, page 10, c. 1, sec. 1, that is referred to in the briefs here. Said section is as follows:

"The Corporation Commission is hereby vested with the power of a court of record to determine:

"First, the amount of refund due in all cases where any public service corporation, person or firm, as defined by the Constitution, charges an amount for any service rendered by such public service corporation, person or firm, in excess of the lawful rates in force at the time such charge was made, or may thereafter be declared to be the legal rate which should have been applied to the service rendered; and, second, to whom the overcharge should be paid."

That section in no wise undertakes to repeal the constitutional provision forbidding the Commission to make its change of rates retroactive, and we do not think that the decision relied upon by the appellees, A., T. & S. F. Ry. Co. v. State, 85 Okla. 223, 206 P. 236, will help the position of the appellees here. The fact that the Commission would have changed the rate it had prescribed, had its attention been called to the matter, by no means would justify a violation of the retroactive section of the Constitution. Several authorities are cited by the appellants from other jurisdictions upon the proposition of the Commission allowing a reparation claim upon its change of a former order, the transaction occurring in the meantime. Among other cases called to our attention by the appellants are M., K. & T. Ry. Co. v. Railroad Commission, from Texas, 3 S. W. (2d) 489, and Producers' Refining Co. v. M., K. & T. Ry. Co. of Texas, 13 S. W. (2d) 680, Mathieson Alkali Works, Inc., v. Norfolk & Western Ry. Co. (Va.) 136 S. E. 608, Utah-Idaho Cent. Ry. Co. v. Public Utilities Commission (Utah) 227 P. 1025, T. & P. Ry. Co. v. Railroad Commission of Louisiana (La.) 69 So. 837, Young-Heading Co. v. Payne, Director General of Railroads (Miss.) 89 So. 782, Miller Mill Co. v. Louisville & N. R. Company (Ala.) 92 So. 797, Northern Pacific Ry. Co. v. Dept. of Public Works (Wash.) 240 P. 362, and also to the language of this court in A., T. & S. F. Ry. Co. v. State, 85 Okla. 223, 206 P. 236, and Chicago, R. I. & P. Co. v. Brown, 105 Okla. 133, 232 P. 43.

The cases seem to be reasoned out on the lines above indicated. We think, under the conditions here existing, that the Commission had no authority to make the reparations complained of in this case, all being retroactive. What has been said disposes of the contention of the appellees for rebates of an earlier date than of those actually allowed.

The action of the Corporation Commission in ordering the reparations in this case is reversed at the cost of the appellees, and the Commission is directed to correct its orders in accordance with this opinion.

LESTER, C. J., and HEFNER, CULLISON, and ANDREWS, JJ., concur. CLARK, V. C. J., and McNEILL, J., dissent. RILEY and SWINDALL, JJ., absent.